LAND, J.
The cause was originally decided by the Court of Appeals in favor of the defendant, but a rehearing was granted, and thereupon the said court certified to the Supreme Court the following question:
“In a case like this, where plaintiff proves only that the damages occurred somewhere between the point of shipment and the point of delivery, but fails absolutely to show that the damages occurred to the stock while it was in the custody of the defendant company and whilst it was being transported over its line, or where the proof fails to show on which of the intermediate railroad lines the damage was inflicted on the stock, is not plaintiff, under such a state of facts, by virtue of the Gar-mack amendment, relegated for recovery to a suit in damages against the initial carrier?”
*527 We answered the question in the negative, for the reasons that the Carmack amendment (Act June 29, 1906, c. 3591, § 7, 34 Stat. 593 [U. S. Comp. St 1913, § 8592]) did not take away the legal right of the plaintiff to sue the defendant for damages to the stock inflicted on its own line, through its own negligence, and did not abrogate the rule of evidence that goods received in good order by the initial carrier are presumed to have been received in like good order by the succeeding carrier, and that a delivery in bad order by the terminal carrier raised the presumption that the injury occurred on the delivering carrier’s line. See Duvall v. Louisiana Western Ry. Co., 135 La. 189, 65 South. 104.
After receiving these instructions the Court of Appeals again rendered judgment in favor of the defendant.
The case is before us on a writ of review granted on the application of the plaintiff, who complained that said judgment was rendered contrary to the instructions of this court.
Our learned brothers below based their judgment on the allegations of plaintiff’s petition and on the evidence, as shown by the following extracts from their opinion:
“Here, plaintiff admits that the said stock was fed at Houston, Tex., although he does not say that they were watered, and on this branch of his demand seems to pitch his action on the fact that they could have been delivered at Crowley in a shorter time than was taken to transport them to that point. The record shows, however, that the stock was properly cared for at Houston, where they were delivered to the defendant company for transportation to Crowley. It is shown that they were carried to Echo practically on schedule time, as the freight was delayed only a little over one hour, and that from Echo they were, conveyed on schedule time to Crowley, the point of destination.”
“Even if the animals had been delayed between Houston and Crowley, though fed at Houston, which plaintiff admits, but not watered there, which he does not allege, still how could this court fix the amount of damages these animals suffered for such delays and want of water or insufficient attention between the two points. This damage would have to be proportioned to the damage which plaintiff alleges that the stock suffered for want of food, water, rest, and (from) delays all along! the various railroad lines from Clarence, Okl., to Crowley, La.”
The preponderance of the evidence supports the foregoing statement of facts. It was proven that the animals were watered, fed, and rested at Houston, Tex., before delivery to the defendant, which safely transported and delivered them at Crowley about one hour and a half behind schedule time.
The only damages claimed are for delay in transportation and want of proper attention to the animals.
This brief delay could not have appreciably affected the condition of the animals. The plaintiff might have sued the initial carrier, and recovered on the facts disclosed by the record.
Judgment affirmed.