The STATE OF COLORADO,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 4965.

United States Court of Appeals
Tenth Circuit.

Dec. 20, 1954.

Frank A. Wachob, Deputy Atty. Gen. (Duke W. Dunbar, Atty. Gen., and Omer L. Griffin, First Asst. Atty. Gen., on the brief), for appellant.

Neil Brooks, Sp. Asst. to Atty. Gen. (J. Stephen Doyle, Jr., Sp. Asst. to Atty. Gen., Donald E. Kelley, U. S. Atty., Denver, Colo., and Donald A. Campbell, Attorney, U. S. Dept. of Agriculture, Washington, D. C., on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

This suit was instituted by the United States at the instance and request of the Secretary of Agriculture against the State of Colorado to collect civil penalties under the Packers and Stockyards Act of 1921, as amended, 7 U.S.C.A. § 181 et seq.,[1] herein called the Act. It was alleged that the State Board of Stock Inspection Commissioners, a division of the Executive Department of the State of Colorado, herein called the Board, carried on brand inspection activities at the Union Stockyard Company at Denver, Colorado, a stockyard posted under the Act, without complying with the provisions of the Act requiring a marketing agency to register as such. It was al-leged that the Board carried on the business of a marketing agency at such stockyard by inspecting for brands, marks and other identifying characteristics livestock for which it collected an inspection fee of six cents per head, without having obtained an authorization to do so from the Secretary of Agriculture and without having registered with the Secretary of Agriculture as a marketing agency as required by Sections 303 and 317(a) of the Act.

There is no disputed issue of fact. Neither are the fees collected by the Board for such services in issue. It is conceded that since Colorado carried on the activities as charged, without complying or attempting to comply with the provisions of the Act, the only question was one of law, namely, whether Colorado's activities fell under the provisions of the Act and, if so, whether it as a sovereign state was subject to its provisions. The issue was presented to the trial court by a motion to dismiss. The trial court held Colorado's activities covered by the Act and that Colorado was subject to its provisions. The motion to dismiss was accordingly overruled and nominal penalties were imposed by the judgment of the court.

Section 201(c) defines a marketing agency as "any person engaged in the business of * * * (2) furnishing stockyard services;" and Section 203 provides that thirty days after a stockyard is posted as provided in the Act no one " * * * shall carry on the business of a market agency * * * at such stockyard unless he has registered * * *." Under Section 203 of the Act penalties are provided for failure to comply with the provisions of the Act. Section 217a provides that upon written application the Secretary may authorize the charging and collecting by *any department or agency of any State* in which branding and marking of livestock as a means of establishing ownership prevails, or by a duly organized livestock association of any such State, of

---

1. Reference will be made to the Section of the Act as set out in U. S. C. A.

a reasonable fee. The Section further provides that no charge shall be made until such agency has registered *"as a market agency."*

█ Colorado contends that brand inspection is not a stockyard service within the meaning of the Act and that, therefore, one performing such functions is not a marketing agency. Section 201(b) defines stockyard service as "services or facilities furnished at a stockyard in connection with the receiving, buying, or selling * * * marketing, feeding, watering, holding, delivery, shipment, weighing, or handling in commerce, of livestock." These are broad and comprehensive terms and are broad enough to include services rendered in establishing the identity of ownership of livestock offered for sale or transportation in commerce. In fact, Section 217a lends support to this construction because it denominates one furnishing such services as a marketing agency and a marketing agency is defined as one engaged in furnishing stockyard services. This is also the administrative construction which has been placed upon the status of one furnishing services which go to establish identity and ownership of livestock offered at posted stockyards by inspecting brands and identifying marks.[2] In an opinion by Judge McNary of the District Court of the United States for the District of Oregon, January Term, 1929, in the case of Sol Dickerson v. Portland Union Stock Yards Company, not officially reported, it was held that brand inspection of livestock at a posted stockyard was a stockyard service within the provisions of the Act.

█ It is not necessary to determine whether the rule of construction in criminal cases or civil cases should be employed because even in construing criminal statutes words must be given their fair and ordinary meaning, in accord with the intent of Congress.[3] The term "stockyard services" is broad and comprehensive. Webster's New International Dictionary defines a service as "any result of useful labor which does not produce a tangible commodity." Certainly inspection of brands to establish ownership of livestock offered for sale or transportation in commerce qualifies under this definition. It is our conclusion that the brand inspection carried on by the Board at this yard constituted a stockyard service within the meaning of the Act.

Appellant states in its brief that if Colorado wished to inspect for brand and marks and charge a fee therefor at posted stockyards outside of the State of Colorado it would have to do so under the provisions of the Act and would have to seek authority from the Secretary before engaging in such activities. Whether one is subject to the provisions of the Act depends upon the character of the activities undertaken and not on where they are performed. If brand and mark inspection services performed outside the State of Colorado would subject it to the provisions of the Act, it would be because such activities constituted stockyard services under the provisions of the Act. It follows that like activities performed within the state would likewise fall within the provisions of the Act. If inspecting for brands and marks does not constitute stockyard services under the Act, then so far as the Federal Act is concerned Colorado would be free to perform such services within as well as without the State of Colorado.

█ Colorado contends further that as a sovereign state it is not subject to the jurisdiction of the Federal District Court. 28 U.S.C.A. § 1251 gives the Supreme Court original but not exclusive jurisdiction of "All controversies between the United States and a State;" and 28 U.S.C.A. § 1345 gives the United States Courts jurisdiction "of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress", and 28 U.S.C.A.

---

2. Sol Dickerson v. Portland Union Stockyards Co., Docket No. 278.

3. United States v. Raynor, 302 U.S. 540, 58 S.Ct. 353, 82 L.Ed. 413.

§ 1355 gives Federal District Courts original jurisdiction exclusive of the courts of the states of actions to enforce fines or penalties incurred under any act of Congress. This was such an action and was instituted under Sections 1345 and 1355, supra.

There was present a justiciable controversy. Colorado, according to the Government's contention, was engaged in performing stockyard services at a posted stockyard, without complying with the provisions of the Act relating to marketing agencies. If the Government is correct in this and if the Act applies to Colorado, then Colorado is violating the provisions of the Act and is subject to the penalties provided therein.[4]

■■ It may be conceded, as contended for by Colorado, that it conducts its inspection activities in its sovereign capacity as a state. Since the decision by the Supreme Court in United States v. State of California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567,[5] it can no longer be doubted that when a state in its sovereign capacity enters a field which has been preempted by the Federal Government under its Constitution and Congressional Enactments pursuant thereto, the sovereign power of the state with respect to such activities is diminished and subordinated to that of the Federal Government. A distinction which appellant seeks to draw between the facts in the California case and this case is without substance and does not require a contrary holding. The California case,

as does this, involved an act by Congress under the commerce clause to regulate commerce under that power. Congress had in each case constitutional authority to pass the Act in question. The validity of the Act and the regulations involved in this suit are not in question and Colorado is subject to its provisions the same as are private persons or agencies.

■ Nor is the situation altered because the asserted action by Colorado arose under the police power of the state. Many cases are cited by Colorado in which police power regulations have been held to be Constitutional but in none of those cases did they conflict with a Congressional Enactment on the same subject, lawfully enacted under Constitutional authority. It has been held consistently that such state acts when in conflict with the Federal law must give way.[6]

■ The situation in short then is this. Congress under the commerce clause passed the Stockyard Act regulating the handling and transportation of cattle at posted stockyards, engaged in interstate commerce. In this respect it preempted and occupied the entire field with respect to the regulated activities. It provided for comprehensive regulations with respect to the activities covered by the Act. The activities covered by the Act are thereby removed from regulation by the state. Anyone, including a state, municipality, private person or association undertaking to perform any of the acts or furnish any of the services

---

4. 7 U.S.C.A. § 203. "After the expiration of thirty days after the Secretary has given public notice that any stockyard is within the definition of Section 202 of this title by posting copies of such notice in the stockyard, no person shall carry on the business of a market agency or dealer at such stockyard unless he has registered with the Secretary under such rules and regulations as the Secretary may prescribe, his name and address, the character of business in which he is engaged, and the kinds of stockyard services, if any, which he furnishes at such stockyard. Whoever violates the provisions of this section shall be liable to a penalty of not more than $500 for each such of-

fense and not more than $25 for each day it continues, which shall accrue to the United States and may be recovered in a civil action brought by the United States."

5. United States v. State of Arizona, 9 Cir., 214 F.2d 389; State of California v. United States, 320 U.S. 577, 64 S.Ct. 352, 88 L.Ed. 322; Case v. Bowles, 327 U.S. 92, 66 S.Ct. 438, 90 L.Ed. 552.

6. Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441; Charleston & W. Car. R. Co. v. Varnville Co., 237 U.S. 597, 35 S.Ct. 715, 59 L.Ed. 1137; Southern Ry. Co. v. Railroad Commission of Indiana, 236 U.S. 439, 35 S.Ct. 304, 59 L.Ed. 661.

478

covered by the Act at posted stockyards must comply with the requirements of the Act and the regulations promulgated thereunder. This Colorado failed to do and thus incurred the penalties provided therein and imposed by the judgment of the court.

Affirmed.