## WILSON *v.* ANDERSON.

The "board of supervisors of roads, bridges, and road funds for the County of Murray" created by the act of 1917 (Ga. L. 1917, p. 375), did not have authority to appoint a tax-assessor for that county; but such power was vested by the act of 1913 (Ga. L. 1913, p. 123), in the ordinary, these being no board of county commissioners.

No. 3245.  DECEMBER 15, 1922.

Quo warranto. Before Judge Tarver. Murray superior court. May 12, 1922.

*Jesse M. Sellers, W. S. McDaniel,* and *J. Roy McGinty,* for plaintiff. *C. N. King,* for defendant.

FISH, C. J.  F. S. Wilson applied for leave to file an information in the nature of a quo warranto, to inquire into the right of C. A. Anderson to hold office as a member of the board of tax-assessors for Murray County, the relator claiming that he was entitled to hold such office. On the hearing the information was dismissed, and the relator excepted. The information was filed on May 11, 1922. It was alleged therein that the relator was appointed tax-assessor by the board of supervisors of Murray County, on February 14, 1916, for a term of six years, including 1923; and further, that he was appointed to said office under an act of the Georgia legislature approved August 14, 1913, entitled " An act to regulate the return and assessment of property for taxation in this State, . . and for other purposes." There was no board of county commissioners in Murray County on February 4, 1918, when relator claims to have been appointed to the office in question. By an act of the General Assembly approved February 21, 1873 (Ga. L. 1873, p. 282), a board of county commissioners was created for Murray County, and upon such board was conferred " all the

powers the inferior court had prior to the adoption of the con-
stitution of 1868, as prescribed by the Code, of all county matters,
but shall have no other jurisdiction." That act was expressly
abolished by an act of the General Assembly approved August 7,
1917, (Ga. L. 1917, p. 374). On August 17, 1917, the General
Assembly passed an act (Ga. L. 1917, p. 375), the caption of
which was as follows: "An act to create a board of supervisors
of roads, bridges, and road funds for the County of Murray; to
provide for their election; to give them control of the roads,
bridges, and road funds of the county; to define their powers; to
require them to give bond; to fix their pay, and for other purposes."
This act provided that four supervisors of roads, bridges, and road
funds should be elected at the general election for State officials;
that their terms of office should be for two years, or until their
successors were elected and qualified; that they should be com-
missioned by the Governor on certification of their election by the
ordinary of the county; and that the ordinary should be chairman
of such board. They were required to take the same oath as other
county officials, and to give bond in a designated sum, and were
authorized to levy tax for roads and for bridges, for tools and
other road machinery, and for other purposes necessary for the
building of roads, bridges, culverts, drains, and other road work;
they were to be the custodians of all road funds, to appoint road
overseers, employ road builders, let contracts for roads, bridges
and other road work, enforce all road laws and requirements for
working the roads as then prescribed by law, and enforce the law
pertaining to road defaulters, road tax or road work in lieu there-
of. The act further provided "That the said board of supervisors
shall assess and levy all the taxes for county purposes of Murray
County, and shall disburse the same under proper vouchers for
the purpose for which said tax was levied, and for no other purpose,
said taxes to be levied at a regular meeting of the board; and said
board shall also publish a statement of all tax levies, and all ex-
penditures of money, once each quarter in the newspapers of the
county, and shall submit a report to the grand jury at the spring
term of the superior court, showing receipts and expenditures of
all money and county funds, and business transactions had for and
in the name of the county." All laws and parts of laws in con-
flict with the act were repealed.

This act did not create the usual or ordinary board of county commissioners of roads and revenues with substantially all the jurisdiction as to county matters exercised by the old inferior courts prior to their abolition. This act of 1917 remained in force until it was expressly abolished by an act approved August 12, 1921 (Ga. L. 1921, p. 538), which last-mentioned act established a board of commissioners of roads and revenues for Murray County, with the usual jurisdiction as to county matters. On August 14, 1913, the General Assembly passed a general act (Ga. L. 1913, p. 123), to regulate the return and assessment of property for taxation in this State, and for other purposes. The second section of that act provided: " there shall be and is hereby established, in each of the several counties of this State, a board of county tax-assessors. Said county board shall consist of three members to be appointed by the board of county commissioners, or by a majority thereof, or by the ordinary in counties which have no board of county commissioners. The order making such appointment shall be regularly entered upon the record of the superior court of the county; and a certificate from the clerk of the superior court, reciting said order, and that such person has taken the oath required by law, shall constitute the commission of the members of such county boards of tax-assessors, and no other or further form of commission shall be required."

The " board of county commissioners," given the power by this act to appoint a " board of county tax-assessors" is a board of commissioners upon which has been conferred by the statute creating it substantially all the jurisdiction as to county matters exercised by the inferior court during its existence. There being no such board of county commissioners in Murray County on February 4, 1918, when the relator alleges that he was appointed a tax-assessor of that county, the power to appoint such assessor was, under the general law as set forth in the act of August 14, 1913, vested alone in the ordinary of that county; and of course the " board of supervisors of roads, bridges, and road funds " of that county, created by the act of August 17, 1917, had no power to appoint the relator as a tax-assessor.

It appears from an admission made by the relator in the bill of exceptions, that the respondent was appointed to the office in question by the commissioners of roads and revenues created by

the act of 1921, for Murray County. It follows, therefore, that the relator was not entitled to the office of tax-assessor of such county; and that the court did not err in dismissing the information. *Collins* v. *Huff*, 63. *Ga.* 207; *Crovatt* v. *Mason*, 101 *Ga.* 246, 255. (28 S. E. 891).

                          *Judgment affirmed.* *All the Justices concur.*