**GALLAHAR et al. v. GEORGE A. RHEMAN CO., Inc., et al.**

**Nos. 218–220.**

District Court, S. D. Georgia, Augusta Division.

July 2, 1943.

Randall Evans, Jr., and Jack D. Evans, both of Thomson, Ga., for plaintiffs.

Bussey, Fulcher & Hardin, of Augusta, Ga., for George A. Rheman Co. and its insurance carrier.

John M. Slaton, of Atlanta, Ga., for Reliable Transfer Co. and its insurance carriers.

LOVETT, District Judge.

These are negligence cases. There are three of them, companion cases, and the questions now for decision in each case may be considered together.

The causes of action asserted arise out of a collision at night between an ambulance and a gasoline truck at the intersection of two paved highways within the limits of the incorporated town of Thomson, Georgia. The plaintiffs, citizens of Georgia, are the widow of an occupant of the ambulance who was killed in the wreck, the owner of the ambulance which was damaged, and the driver who was injured. The defendants are the owner of the gasoline truck, a common carrier, its driver and insurance carrier, and the owner, driver and insurance carriers (two it is said) of an-

other truck which is alleged to have been so negligently parked in the street near the intersection as to obscure the vision of both drivers of the colliding vehicles. Only two of the defendants are citizens of Georgia, viz., the owner and driver of the parked truck, a Georgia corporation and a Georgia citizen.

The nonresident defendants removed the cases from the state court where filed on the grounds of separable controversies as to them and that no cause of action was alleged against the resident defendants.

The issues now before the court are preliminary to trials on the merits. There are motions to remand,[1] to dismiss,[2] to strike portions of the pleadings,[3] objections to amendments,[4] for judgments on the pleadings[5] and for summary judgments,[6] and there has been a pre-trial conference.[7] These several matters will be considered in their order.

### I. Motions to Remand.

The plaintiffs say the injuries complained of arose out of the joint and concurring negligence of the resident and nonresident defendants, the owner and driver of the parked truck as well as the owner and driver of the colliding gasoline truck, and because the former are for jurisdictional purposes Georgia citizens the cases are not removable and should be remanded. See Pullman Co. v. Jenkins, 305 U.S. 534 (3), at pages 538, 539, 59 S.Ct. 347, at page 349, 83 L.Ed. 334, and cases cited. I am unable to agree.

The owner of the gasoline truck is charged with negligence in that its driver was speeding—violating a criminal law of the state—[8] in failing to observe the ambulance approaching at right angles at the intersection at a reasonable rate of speed—and by driving directly into the ambulance when at the intersection. The only act of negligence charged against the local defendants was that the truck, of large size, standing still, was parked by its driver near the intersection in such a manner as to obstruct the view of the other two vehicles. As I construe the averments, the charge against the nonresident defendant gasoline truck owner is based on different

---

[1] 28 U.S.C.A. § 71.

[2] Rule 12(b), Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

[3] Rule 12(f), id.

[4] Rule 15(a), id.

[5] Rule 12(c), id.

[6] Rule 56(b, c, e), id.

[7] Rule 16, id.

[8] Ga.Code, Secs. 68-301(a), 68-303(i), 68-9908; Petty v. Moore, 43 Ga.App. 629(1), 159 S.E. 728; Hall v. Ponder, 50 Ga.App. 627(2), 179 S.E. 243.

657

and nonconcurrent acts of negligence,[9] and a cause of action joint in character is not alleged. That being so, a separable controversy is presented. 4 Hughes, Federal Practice, § 2376; Gulf & S. I. R. Co. v. Gulf Refining Co., D.C., 260 F. 262, 264; Culp v. Baldwin, 8 Cir., 87 F.2d 679(2), 680; Pullman Co. case, supra, 305 U.S. at page 538, 59 S.Ct. at page 349, 83 L.Ed. 334. It must be remembered there is no allegation that except for the parked truck the collision would not have occurred, and it is quite consistent with the allegations made that the excessive speed of the gasoline truck would have produced the injuries anyway.

Apart from separability, however, the case is still removable, for, in my view, no sufficient claim for relief is set out against the two local defendants. If that is so, diversity of citizenship exists between all of the defendants and the plaintiffs, and the case was properly removed. See Knight v. Atlantic Coast Line R. Co., 5 Cir., 73 F.2d 76, 99 A.L.R. 405.[10] The Georgia law controls as to the liability of the owner of the parked truck.[11] It does not appear that the truck was unlawfully parked. If it had been parked within eight feet of the center of the street, which is not alleged, the state law prohibiting such parking could not be invoked as it is inapplicable to the streets of an incorporated city.[12] As the pleadings were cast at the time of removal, no city ordinance was claimed to have been violated by the parked truck.[13] The law of Georgia seems to be, under these circumstances, the owner of the parked truck is absolved of liability on the theory that his negligence is not the proximate cause of the collision; that the independent, illegal act of the third person intervening and producing the injury, and without which it would not have happened, shall be regarded as the proximate or producing cause, excusing the other defendant, though he may have been negligent as to other parties having a different relationship to him. See Grier et al. v. Williams, 68 Ga. App. 863, 24 S.E.2d 509, 512. Pullen v. Georgia Stages, Inc., 62 Ga.App. 592, 9 S.E.2d 104; Cain v. Georgia Power Co., 53 Ga.App. 483, 186 S.E. 229. The cases of Sprayberry v. Snow, 190 Ga. 723, 10 S. E.2d 179; Gazaway v. Nicholson, 61 Ga. App. 3, 5 S.E.2d 351; Callahan v. Cofield, 61 Ga.App. 780, 7 S.E.2d 592, and the Bozeman case, cited in note 13, are distinguishable on their facts. In the Sprayberry case a pedestrian was injured and the blinding lamps of the parked truck caused another automobile to strike him. It was affirmatively alleged that if the driver of the parked truck (who was sitting at the wheel) had dimmed his lights in response to a signal therefor from the approaching

---

[9] We may disregard the pleader's characterization of the several acts of negligence as "joint" and "concurrent" as a conclusion only, the facts being fully pleaded.

[10] See, also, Plunkett v. Gulf Refining Co., D.C., 259 F. 968(2); Pan-American Petroleum Corp. v. Williams, 45 Ga. App. 490(2), 165 S.E. 473; Powell v. Young, 56 Ga.App. 613(3), 193 S.E. 358.

[11] Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487.

[12] Payne v. A. B. C. Truck Lines, 189 Ga. 112, 5 S.E.2d 241; Id., 61 Ga.App. 36, 5 S.E.2d 590; Mishoe v. Davis, 64 Ga.App. 700, 14 S.E.2d 187.

[13] By amendments the plaintiffs now seek to plead a municipal ordinance requiring certain lights at night on parked trucks and its violation. They cannot be considered on the motions to remand, and for two reasons: First, the right of removal depends upon the case disclosed when petition therefor is filed. Pullman Co. case, supra; Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. [182] 183, 189, 190, 44 S.Ct. 266, 68 L.Ed. 628, 31 A.L.R. 867. Secondly, the failure to have lights on the truck does not seem to have contributed in any manner to the collision. For aught that is alleged lights on the truck might have made it even more difficult for the onrushing gasoline truck to have discovered the ambulance approaching the intersection from behind the parked vehicle. The provision for lights does not seem to have been made for the benefit of persons driving automobiles on another and intersecting street, but rather for the protection of those who might collide with the unlighted vehicle. Unless one is of the class for whose benefit the regulation was made he can not invoke it. See Platt v. Southern Photo Material Co., 4 Ga.App. 159(2c), 164, 165, 60 S. E. 1068; Bozeman v. Blue's Truck Line, 62 Ga.App. 7, 9, 7 S.E.2d 412; Franklin v. Houston Elec. Co., Tex.Civ.App., 286 S.W. 578; Barnett v. Bull, 141 Wash. 139, 250 P. 955; Johnson v. Cornelius, 200 Mich. 209, 166 N.W. 983, L.R.A.1918D, 880; Watts v. Montgomery Traction Co., 175 Ala. 102, 57 So. 471.

automobile the catastrophe could have been avoided. In the Bozeman case the parked truck (not being in a municipality) was violating a state law by the manner of parking and by being left without lights. Two other automobiles on the same highway collided through the effort of one of them to avoid striking the truck, and plaintiff riding in one of them was injured in the collision. The case recognizes the true rule of liability in Georgia. It was said:

"Where there is an act of negligence which is not operating and active at the time of another which follows, which latter act is caused by a breach of duty which the party guilty of the last act of negligence owed to the injured party, the law will regard the last act of negligence as the superseding cause, and will not look beyond it to the first act of negligence unless the person guilty of the first act of negligence could reasonably have anticipated that the second or intervening act might, not improbably, but in the natural and ordinary course of things, follow his act of negligence". 62 Ga.App. at page 8, 7 S.E.2d at page 414.

This is a very different situation from a parked truck in a public street near an intersection in a municipality, where common experience tells us it is customary and often necessary for such vehicles to be stopped. In Gazaway's case, the driver of a school bus negligently discharged a child in the path of an oncoming automobile. It appeared in the Callahan case the truck created a cloud of dust and stopped in a highway so enveloped and in such a manner that an approaching car driver was practically blinded. If there is anything in Louisville & N. R. Co. v. Athon, 54 Ga. App. 787, 189 S.E. 563, in conflict with what is here decided, that case by a divided court must give way to the other and later Georgia cases which I have mentioned. See generally on this subject of intervening cause breaking the connection between the original wrongful act and the subsequent injury. Mayor, etc., of City of Macon v. Dykes, 103 Ga. 847, 848, 849, 31 S.E. 443; Andrews & Co. v. Kinsel, 114 Ga. 390, 392, 40 S.E. 300, 88 Am.

St.Rep. 25; Southern R. Co. v. Webb, 116 Ga. 152, 42 S.E. 395, 59 L.R.A. 109; Postal Tel. Cable Co. v. Kelly, 134 Ga. 218, 67 S.E. 803; Atlantic Coast Line R. Co. v. Daniels, 8 Ga.App. 775, 70 S.E. 203; City of Albany v. Brown, 17 Ga.App. 707, 88 S.E. 215; Means v. City of Barnesville, 28 Ga.App. 671, 112 S.E. 739; Horton v. Sanchez, 57 Ga.App. 612, 613, 618, 195 S.E. 873; Barnwell v. Solomon, 59 Ga.App. 507, 1 S.E.2d 463; Stallings v. Georgia Power Co., 67 Ga.App. 435, 20 S.E.2d 776.

The motions to remand should be and are denied.

## II. Motions to Dismiss and for Summary Judgment and Judgment on the Pleadings

It follows from what has been said touching the motions to remand that the local defendants, the owner of the parked truck and its driver,[14] should be dismissed as party defendants for failure to state a claim for relief as against them. And with them goes the alleged insurance carriers,[15] for if there is no liability against the one there is none against the others. And it is so ordered. This makes it unnecessary to pass on the other grounds for dismissal urged by the insurance carriers only.

There remains, however, the motions for judgment on the pleadings and for summary judgment by the owner of the gasoline truck[16] and its driver[17] on the ground that no claim for relief is stated against them, and that the uncontroverted facts show they are not liable, and there are also motions to dismiss by the insurance carrier of the gasoline truck owner[18] on the ground it has been improperly joined as a defendant. I think a case is stated against the owner and driver of the gasoline truck, and the motions for judgment filed by them are, therefore, overruled.

A different question presents itself on the motion of the insurance carrier.[19] It appears from the pre-trial conference and affidavits then presented that the owner of the gasoline truck, a motor common carrier, and, as stated, a foreign corpora-

[14] The Reliable Transfer Co., Inc., a Georgia corporation, and James Hardaway, a Georgia citizen.

[15] General Accident Fire & Life Assurance Corporation and Liberty Mutual Insurance Company, both foreign corporations.

[16] George A. Rheman Company.

[17] Clinton Thompkins Outz.

[18] American Fidelity & Casualty Company.

[19] Demurrers in the state court by the owner of the gasoline truck and its driver raise the same issues of law but they will be governed by my ruling on the motion to dismiss.

tion holds a certificate of convenience and necessity from the Interstate Commerce Commission to operate a line of interstate trucks in Georgia, and that at the time of plaintiffs' injuries they were actually operating exclusively in interstate commerce; that the owner had no office or place of business in Georgia; and that while the owner did some intrastate business in Georgia for a brief period of time that had been discontinued about sixty days before the collision; and at the time complained of the gasoline truck was en route from Aiken, South Carolina, to Macon, Georgia, there to receive a load of gasoline. These facts are not controverted. The question is, may the insurance carrier be sued jointly with the insured (truck owner) under this state of facts?

The truck owner here first qualified with the Interstate Commerce Commission under the Federal Motor Carrier Act 1935, as amended, now known as part II of the Interstate Commerce Act, 49 U.S.C.A. § 301 et seq., and received the certificate required.[20] Under the appropriate section[21] and regulation requiring a bond or other security approved by the Commission the owner caused a policy of indemnity insurance issued by the insurance carrier here sued to be filed with the Commission. The Act, rules and forms prescribed by the Commission require the policy (or endorsement) to bind the insurer "to pay any final judgment" recovered against the insured.[22] The policy filed, of which a specimen policy was presented at the pre-trial conference, indemnified the insured "against loss from the liability imposed by law" upon it for actual damages to persons suffering death, receiving bodily injuries or damage to property. The insurance carrier did not agree to be sued in the same action with the insured. Later, the truck owner applied to do intrastate business also under the Georgia Motor Common Carrier Act, as amended in 1937, Ga.Code, Sec. 68–604, 612, and was granted permission. Certificates showing the insurance filed with the Interstate Commerce Commission were filed with the Georgia Public Service Commission. The Georgia Act, however, unlike the Interstate Commerce Act, expressly provides that if an indemnity policy is given in lieu of a bond for the protection of the public against injuries proximately

caused by the negligence of the carrier or its servants, "it shall be permissible to join the motor carrier and the insurance carrier in the same action". Ga.Code, Sec. 68–612. The truck owner, because it says it had ceased to do any intrastate business, urges that the Georgia Act no longer applies to his activities when engaged in an interstate journey.

I can not agree.

It has been ruled in this Circuit that persons injured on highways of Georgia by negligence of motor carrier which had qualified with both Federal and State authorities as a common carrier are entitled to rely on Georgia statute requiring the carrier to file liability policy for protection of public and permitting joinder of insurance carrier in action against motor carrier, and that it is immaterial whether particular vehicle causing an injury is engaged at the time in interstate or intrastate commerce. Acme Freight Lines v. Blackmon, 5 Cir., 131 F.2d 62(3), 64; Be-Mac Transportation Co. v. Lairmore, Okl. Sup., 129 P.2d 192. See, also, Tucker v. Casualty Reciprocal Exchange, D.C., 40 F. Supp. 383. The case of Grier v. Tri-State Transit Co., D.C., 36 F.Supp. 26, may be inapplicable to the instant case for there the plaintiff was an interstate passenger and not a resident of the state where the action was brought. If I am wrong about this being a valid distinction I nevertheless feel I must follow the law as laid down by the Fifth Circuit Court of Appeals in the Acme case, supra. Defendants urge the Acme case is not controlling as there the carrier had not ceased to do an intrastate business. But had the carrier here ceased in legal contemplation? True, no business of an intrastate character had been done for sixty days before the accident. But it could start up again at any time. The carrier may have resolved to do no more, but its officers could change their minds. It was still qualified. The Georgia Act (Sec. 14, Ga.L.1931, p. 206, Ga.Code, Sec. 68-619) expressly recognized the carrier's right to discontinue its intrastate service wholly or in part, and provided the method for so doing, viz: upon thirty days' published notice to be prescribed by the Georgia Commission and cancellation of the certificate. It chose not to

---

[20] See 49 U.S.C.A. § 306.

[21] 49 U.S.C.A. §§ 310a(c), 315.

[22] See Rule 1 and forms B. M. C, 31 and 33, ICC regulations Nov. 15, 1936, pages 2, 6 and 12; 49 U.S.C.A. § 315.

comply with these provisions, and until it did so it remained an intrastate carrier ·in fact, I think, as well as in theory. Any day it chose, and its agents were so disposed, it could move freight from one point in Georgia to another without seeking other authority than that already held. A very different question would be presented if its intrastate certificate had been surrendered and cancelled in compliance with the statute.[23]

My conclusions are that the motions of the insurance carrier to be dismissed should be and are overruled.

### III. Motions to Strike.

The plaintiffs move to strike certain portions of the answers of the defendants setting up negligence of the driver of the ambulance and that he was known by his employer to be a reckless driver involved in a number of previous collisions. These motions should be and are overruled with this qualification. In the cases where the ambulance owner is not suing facts will have to be shown that make the negligence or recklessness of the ambulance driver imputable to the plaintiffs in order for these issues to be submitted to a jury. These questions can best be determined after the proof has been offered. And in the case where the ambulance owner is the plaintiff, the court may withdraw from the jury's consideration all allegations with respect to previous collisions by its driver unless it is shown on the trial his employer had knowledge of them and they were brought about through his negligence.

In the Blanchard case the plaintiff moves to strike counterclaims of the defendants in which they seek to recover damages to the gasoline truck and for personal injuries to its driver. The urge is made that the counterclaims were omitted from the answers as originally filed and are now brought in too late by amendments. I think they should be allowed to remain in the pleadings. As they arise out of the transaction or occurrence that is the subject-matter of the opposing party's claim they are compulsory counterclaims and if not adjudicated in these proceedings the defendants may lose all right to have them determined. See Rule 13(a), Rules of Civil Procedure; Pennsylvania R. Co. v. Musante-Phillips, Inc., D.C., 42 F.Supp. 340(3), 341; Thierfeld v. Postman's Fifth Ave. Corp., D.C., 37 F.Supp. 958, 960(20), 962. That they were omitted from the original answer is of no consequence when justice requires them to be allowed by amendments. See Rule 13(f), Rules of Civil Procedure. The philosophy of the new rules is to discourage separate actions which make for multiplicity of suits and wherever possible to permit, and sometimes require, combining in one litigation all the cross-claims of the parties, particularly where they arise out of the same transaction. Amendments are more liberally allowed under the new rules than before. See Rule 15(a); International Ladies' Garment Workers' Union v. Donnelly Garment Co., 8 Cir., 121 F.2d 561(1), 563.

There are other motions not pressed in the arguments and briefs and which therefore are considered as abandoned. Only one more should be here noticed. It relates to the removal bond. It is said no original power of attorney by the surety has been filed in these proceedings showing the authority of its attorney in fact to execute the bond, only a copy certified as correct by the surety's assistant secretary,[24] and that it should be stricken from the record. If the bond is in any manner defective it is only formally so. It may be ratified even now. Ashe v. Union Cent.

---

[23] A very different question would also be presented if instead of obtaining a certificate to do an intrastate business and qualifying under section 7 of the Georgia Act (Ga.L.1931, p. 203, Ga. Code, Sec. 68-612, as amended in 1937, Ga.L.1937, p. 731), it had merely registered as an interstate carrier under section 30 of the Act (Ga.L.1931, p. 211, Ga.Code, Sec. 68-633). We might then be concerned with whether Congress had pre-empted the field of legislation and if different or additional forms of insurance could lawfully be required by the state. See Charleston & W. C. R. Co. v. Varnville Furn. Co., 237 U.S. 597, 604,

35 S.Ct. 715, 59 L.Ed. 1137, Ann.Cas. 1916D, 333; University Overland Express, Inc., v. Alsop, 122 Conn. 275, 189 A. 458, 463; University Overland Exp., Inc., v. Griffin, 89 N.H. 395, 200 A. 390; Apger v. New York Cent. R. R., 310 Mass. 495, 38 N.E.2d 652. We have no such question here.

[24] It was stated by counsel for defendants at the pre-trial conference, as I recall (however, the minutes do not show it), that the original power of attorney was of file in this court and had been so filed long before these removal proceedings were taken.

662

Life Ins. Co., C.C., 115 F. 234, 235(4), 236; Collins Mfg. Co. v. Wickwire Spencer Steel Co., D.C., 11 F.2d 196(4), 199; Chamberlain v. American Nat. Life, etc., Co., 11 Hun., N.Y., 370; Dennis v. Alachua County, C.C.Fla., 7 Fed.Cas., page 467, No. 3,791, 3 Woods 683; C. I. T. Corp. v. Ambrose, D.C., 36 F.Supp. 311; Phillips v. Manufacturers Trust Co., 9 Cir., 101 F.2d 723(4). Defects or want of form are generally to be disregarded in courts of the United States, and can be cured at any time by amendment. 28 U.S.C.A. § 777; Kinney v. Columbia Savings, etc., Ass'n, 191 U.S. 78, 82, 24 S.Ct. 30, 43 L.Ed. 103. See, also, note 138 to 28 U.S.C.A. § 80, where a large number of cases in which it was held removal bonds are amendable in the federal courts after the time allowed to remove has expired are collected. It should be made more clearly to appear in this case, however, that the removal bond as executed is now ratified.

IV. Objections to Amendments.

Defendants object to certain amendments offered by the plaintiffs. The amendments will have to be recast to conform to the court's rulings on the motions to remand and to dismiss. Much that is set out in them, however, may be proper not as a distinct charge of negligence against the defendants who are being dismissed but as historical or descriptive of conditions prevailing at the time of the collision between the ambulance and the gasoline truck. The specifications of negligence as such on the part of the defendants now relieved of liability, and having no application to the remaining defendants, should be deleted from the pleadings. Let the amendments be redrafted.